IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| KRISTYN T., | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil No. TMD 18-2991 |
| v. | * | |
| | * | |
| | * | |
| ANDREW M. SAUL, | * | |
| Commissioner of Social Security, | * | |
| | * | |
| Defendant.[1] | * | |
| | ************ | |

**MEMORANDUM OPINION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Kristyn T. seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 12) and Defendant's Motion for Summary Judgment (ECF No. 17).[2] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that she is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Defendant's Motion for Summary

---

[1] On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security. He is, therefore, substituted as Defendant in this matter. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

Judgment (ECF No. 17) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 12) is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

# I

## Background

On February 1, 2017, Administrative Law Judge ("ALJ") Susan Maley held a hearing in Washington, D.C., where Plaintiff and a vocational expert ("VE") testified. R. at 36-74. The ALJ thereafter found on May 24, 2017, that Plaintiff was not disabled from her alleged onset date of disability of December 27, 2013, through the date of the ALJ's decision. R. at 7-25. In so finding, the ALJ found that Plaintiff had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) except with the following nonexertional limitations: occasionally climbing ramps or stairs; never climbing ladders, ropes or scaffolds; avoiding even moderate exposure to changes in lightning and workplace hazards; carrying out simple tasks in 2-hour increments with 10 to 15 minute breaks in between; and adapting to simple changes in a routine work setting.

R. at 13-14.[3] In light of this RFC and the VE's testimony, the ALJ found that Plaintiff could perform work in the national economy such as an office helper, router, or counter clerk. R at 19. The ALJ thus found that Plaintiff was not disabled from December 27, 2013, through May 24, 2017. R. at 20.

After the Appeals Council denied Plaintiff's request for review, Plaintiff filed on September 27, 2018, a complaint in this Court seeking review of the Commissioner's decision. Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* "If someone can do light work, [the Commissioner determines] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." *Id.*

disposition and entry of judgment. The case then was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

II

## Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1522(a), 416.920(c), 416.922(a).[4]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R.

---

[4] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522(b), 416.922(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1522(b)(1)-(6), 416.922(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

§§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

# III

## Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## IV

### Discussion

Plaintiff contends that the ALJ erroneously assessed her RFC contrary to Social Security Ruling[5] ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). Pl.'s Mem. Supp. Mot. Summ. J. 3-9, ECF No. 12-1. Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of her ability to perform the physical and mental demands of work. *Id.* at 5. In particular, she contends that the ALJ "failed to set forth a narrative discussion setting forth how the evidence supported each conclusion, citing specific medical facts and nonmedical evidence." *Id.* Plaintiff further argues that the ALJ failed to address adequately the frequency and duration of her migraine headaches. *Id.* at 6-9. Plaintiff finally argues that the ALJ erroneously evaluated her subjective complaints. *Id.* at 9-11. For the following reasons, Plaintiff's contentions are unavailing.

**A.     ALJ's Credibility Determination**

The Court turns first to Plaintiff's argument that substantial evidence does not support the ALJ's assessment of her credibility. The ALJ reviewed Plaintiff's testimony in her decision:

> [Plaintiff] alleges disability primarily due to migraine headaches. [Plaintiff] stopped working as an accountant in December 2013 at which time she applied for disability benefits from a private insurer, and [she] was apparently denied. [Plaintiff] testified she began experiencing tension headaches since college. She initially found relief of her symptoms from chiropractic treatment. However, she has been experiencing severe migraine headaches "nearly constantly" since 2013. She tried working two days a week, but she stopped because it was intolerable. The biggest triggers of her migraines are changes in

---

[5] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

> lighting and stress. She has lamps in her bedroom and uses a blackout curtain. [Plaintiff] testified she has difficulty tracking things and difficulty with her short-term memory. [Plaintiff] explained any kind of stressor or making decisions "on the fly" make [sic] her extremely tired. Her pain level is an 8/10. [Plaintiff] receives Botox treatments. As a side effect of this treatment, she experiences increased exhaustion and her sleep schedule has changed. She no longer sleeps eight hours a night. [Plaintiff] is afraid to drive other than for very short distances because of symptoms of dizziness.

R. at 14 (citation omitted); *see* R. at 39-59. According to Plaintiff, the ALJ failed to explain which of her statements to believe and which to discredit. Pl.'s Mem. Supp. Mot. Summ. J. 9-10, ECF No. 12-1 (citing *Mascio v. Colvin*, 780 F.3d 632, 640 (4th Cir. 2015)). Plaintiff contends that the ALJ considered the type of activities that she could perform without also considering the extent to which she could perform them. *Id.* at 10-11 (citing *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)). For the reasons discussed below, Plaintiff's arguments are unavailing.

> Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms. Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. The second determination requires the ALJ to assess the credibility of the claimant's statements about symptoms and their functional effects.

*Lewis v. Berryhill*, 858 F.3d 858, 865-66 (4th Cir. 2017) (citations omitted); *see* 20 C.F.R. § 404.1529(b)-(c).

Here, the ALJ found that Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms" but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R.

at 14-15. The ALJ found that "[o]ther evidence tends to show [Plaintiff's] symptoms are not as severe as she alleges." R. at 17.

> For example, [Plaintiff] reported that lights and stress were primary triggers for her migraines, but [she] testified that she plays video games for about three hours per night, from 9:00 P.M. to midnight. She also testified she spends days reading a lot. She has attended numerous medical appointments during the day without having an observed migraine event. [Plaintiff] also reported in her function report that her hobbies include reading, cross-stitch, video games, and surfing the internet. Further, [Plaintiff] testified and reported that Botox injections have not provided any significant relief. However, as discussed above, she told her treating doctors that they did provide relief and requested repeat injections.

R. at 17 (citation omitted).

Thus, "the ALJ cited [Plaintiff's] daily activities for purposes of the credibility determination and not as examples of the functions [she] could perform for an entire day." *Ladda v. Berryhill*, 749 F. App'x 166, 173 n.4 (4th Cir. 2018). "The ALJ did not equate [Plaintiff's] ability to perform certain activities of daily living with an ability to work full time. Instead, [the ALJ] used her reported activities to assess the credibility of her statements concerning the intensity, persistence, or limiting effects of her symptoms consistent with the applicable rules . . . ." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Because "the ALJ cited adequate evidence from the record to support [her] conclusion that [Plaintiff's] statements were not entirely credible," Plaintiff's contention that substantial evidence does not support the ALJ's determination of her credibility is without merit. *Ladda*, 749 F. App'x at 171 n.3.

## B. ALJ's RFC Assessment

The Court next addresses Plaintiff's contention that the ALJ erred in assessing her RFC. Pl.'s Mem. Supp. Mot. Summ. J. 3-9, ECF No. 12-1. SSR 96-8p explains how adjudicators should assess RFC and instructs that the RFC

> "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

*Mascio*, 780 F.3d at 636 (alteration in original) (footnote omitted) (citations omitted). The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki*, 729 F.3d at 177). The court in *Mascio* concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. *Id.* at 637; *see Monroe v. Colvin*, 826 F.3d 176, 187-88 (4th Cir. 2016) (remanding because ALJ erred in not determining claimant's RFC using function-by-function analysis; ALJ erroneously expressed claimant's RFC first and then concluded that limitations caused by claimant's impairments were consistent with that RFC).

Plaintiff first contends that, by failing to set forth a narrative discussion while assessing her RFC, the ALJ did not comply with SSR 96-8p. Pl.'s Mem. Supp. Mot. Summ. J. 5-6, ECF

No. 12-1. In assessing her RFC, however, the ALJ considered the treatment records, opinion evidence, hearing testimony, and her credibility (R. at 14-18). *See Chandler v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-12-2712, 2014 WL 457746, at *2 (D. Md. Jan. 31, 2014) ("[T]he ALJ provided approximately a four-page written narrative on her RFC alone, in which he summarized [the claimant's] hearing testimony, made a credibility determination, reviewed both the treatment records and the opinion evidence, and noted observations from the hearing. [The claimant's] boilerplate argument is therefore inapplicable in this case." (citation omitted)); *see also Ladda*, 749 F. App'x at 172 ("[T]he ALJ in this case used evidence from the record to explain his finding that [the claimant] was capable of light work. For example, the ALJ noted that [the claimant] claimed that he could walk for only ten to fifteen minutes at a time and could not lift ten pounds, but he explained that the other evidence in the record, such as medical records and opinion evidence, did not fully substantiate these claims. The ALJ also explained the relative weight he assigned to the statements made by [the claimant], [the claimant's] treating physician, and the state agency medical consultants. The ALJ provided a sufficiently thorough discussion for us to agree that his conclusion that [the claimant] was limited to light work was supported by substantial evidence."). Plaintiff's contention in this regard thus is unavailing.

Plaintiff also argues to no avail that remand is warranted because the ALJ failed to address in the RFC assessment the frequency and duration of her migraine headaches. Pl.'s Mem. Supp. Mot. Summ. J. 6-9, ECF No. 12-1. The ALJ found that, because of Plaintiff's difficulty in concentrating due to migraines, she could carry out simple tasks in two-hour increments with ten- to fifteen-minute breaks in between, noting her testimony that she played video games for about three hours per night from 9:00 p.m. to midnight (R. at 16-17). *See Johnson*, 434 F.3d at 658 ("The ALJ logically reasoned that the ability to engage in such

activities is inconsistent with [the claimant's] statements of excruciating pain and her inability to perform such regular movements like bending, sitting, walking, grasping, or maintaining attention."); *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (per curiam); *Jarrell v. Berryhill*, No. 3:18-CV-00490, 2019 WL 1983260, at *12 (S.D.W. Va. Apr. 15, 2019) ("[H]ere the ALJ clearly considered that Claimant had a long history of migraine headaches, that he had worked in the past with headaches, and his current headaches were responsive to treatment. The ALJ also explained her reasons for discounting Claimant's statements regarding the persistence and disabling qualities of his migraine headaches. As stated, substantial evidence supported the ALJ's findings."), *report and recommendation adopted*, No. CV 3:18-0490, 2019 WL 1983250 (S.D.W. Va. May 3, 2019); *Adrienn R. v. Berryhill*, Civil No. TJS-18-0787, 2019 WL 140888, at *3 (D. Md. Jan. 9, 2019) ("The ALJ fairly considered [the claimant's] allegations regarding the severity of her migraines and properly determined that the migraines did not cause any functional limitations that would preclude her from performing a reduced range of light work. Because the ALJ's findings are supported by substantial evidence, [the claimant's] argument is unavailing.").

Plaintiff nonetheless maintains that the ALJ should have accounted for time off task and absenteeism. Pl.'s Mem. Supp. Mot. Summ. J. 8-9, ECF No. 12-1. The VE testified that no work would be available to an individual capable of remaining on task for only 75% of the workday or workweek. R. at 72. Absences of two days per month would also preclude work. R. at 72-73. Plaintiff's treating neuropathic doctor, Autumn Frandsen, N.D., opined that she would be off task at least 25% during a workday and absent from work at least four days per month. R. at 16, 17, 497, 501. Dr. Frandsen also opined that Plaintiff's "migraines make it difficult to even stand exposure to light of any kind and can often resign sufferers to bed for days at a time." R. at 430, 495. The ALJ, however, gave little weight to the doctor's opinions because they were not

supported by the record, as "the extreme limitation that [Plaintiff] cannot stand exposure to 'light of any kind' is unsupported by the record and inconsistent with [her] hearing testimony that she reads 'a lot' with lamps on and shops at Wegmans." R. at 17, 18. Substantial evidence supports the ALJ's reasons for giving little weight to the doctor's opinions, which Plaintiff does not dispute. *See Milam v. Colvin*, 794 F.3d 978, 984 (8th Cir. 2015) (noting that claimant's daily activities can support ALJ's discounting of treating physician's opinion); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600-02 (9th Cir. 1999) (considering inconsistency between treating physician's opinion and claimant's daily activities to be specific and legitimate reason to discount treating physician's opinion); *Chavis v. Apfel*, No. 98-1145, 1998 WL 827322, at *3 (4th Cir. Dec. 1, 1998) (per curiam) (unpublished table decision) ("Here, the ALJ properly discounted the opinions of several of [the claimant's] treating physicians that she was disabled because the opinions were conclusory and inconsistent with various activities that [the claimant] has engaged in over the years."); *Craig*, 76 F.3d at 590 (determining that treating physician's medical notes and claimant's reported daily living activities were persuasive evidence that contradicted physician's conclusory opinion based on claimant's subjective reports of pain).

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards here. Thus, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

# V

## Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 17) is **GRANTED**. Plaintiff's Motion for Summary Judgment (ECF No. 12) is **DENIED**. The Commissioner's final decision is **AFFIRMED**. A separate order will issue.

Date: February 24, 2020                                     /s/
                                                            Thomas M. DiGirolamo
                                                            United States Magistrate Judge